# CHARLESTON.

KROHN *et al. v.* WEINBERGER *et al.*

Submitted June 21, 1899—Decided November 28, 1899.

1. RECEIVER—*Application—Appointment.*
   Interlocutory applications for a receiver before answer are usually supported by affidavits of the grounds relied upon, and it would ordinarily seem to be sufficient if the facts upon which the application is based are verified by the affidavit of plaintiff alone. (p. 129.)

2. RECEIVER—*Appointment.*
   The appointment of a receiver being for the preservation of the property and the protection of the litigants pending the suit, such appointment gives no advantage to the person at whose instance it is made, nor does it change any title or create any lien. (p. 130.)

3. EQUITY—*Receiver—Case at Rules.*
   In a suit in equity, brought for the purpose of having a receiver appointed, the court, or the judge thereof in vacation, may, upon a proper presentation of facts, appoint a receiver, and direct the sale of property; but while the case is still at rules, and not matured for hearing, the court cannot proceed to enter a decree settling the principles of the cause and distributing the money. (p. 130).

Appeal from circuit court, Wood County.

Bill by Krohn, Fechheimer & Co. against J. Weinberger and others. Decree for plaintiff, and defendant the Hamilton Brown Shoe Company appeals.

*Reversed.*

J. W. VANDERVORT, for appellant.

V. B. ARCHER, for appellees.

ENGLISH, JUDGE:

J. Weinberger was engaged in the shoe business in the town of Parkersburg, W. Va., and became indebted to several parties and firms that obtained judgments against him, sued out executions, and levied the same upon the stock in said store on the 19th, 20th and 22d of October,

1898, the Hamilton Brown Shoe Company, a corporation, filed an affidavit for an attachment against said Weinberger in the clerk's office of the Wood County circuit court, and obtained an order of attachment, and had the same levied by the sheriff of said county on said stock of goods, but gave no bond, and for that reason possession was not taken by the sheriff. On October 22, 1898, Krohn, Fechheimer & Co. presented their bill in equity to the judge of the circuit court, in which they set forth the facts in regard to the judgments obtained against the defendant, and as to the attachment sued out by appellants and levied upon said merchandise, and alleged that the whole stock was worth two thousand dollars or two thousand five hundred dollars, and charged that there was danger of loss to the creditors, the plaintiffs and defendants, if said property was sold under said executions, and danger of continued conflicts in the liens against said property, and of loss to same, as the constables had no right or authority to invoice said goods, and sell them in bulk, or to distribute the proceeds of sale. The plaintiffs further charge that the only safe way to pursue was to place said stock of goods in the hands of a special receiver, so that the same might have a decree for the amount of their debt, interest, and costs, and that said receiver might be appointed and duly authorized to take possession of said stock, cause the same to be invoiced, and sold in bulk or at retail, as might be deemed best for all concerned; and that the constable Pat Oliver might be enjoined from futher proceedings, etc. Notice having been served on Weienberger of the plaintiffs intention to move in vacation for the appointment of a special receiver, on October 22, 1898, said judge in vacation appointed such receiver for said goods, and authorized him to take possession, and sell in bulk or at retail, as, in his judgment, might be proper, after an inventory had been made by appraisers. He was also directed to dispose of the unexpired term of the lease on the store room occupied by said Weinberger. Bond in the penalty of three thousand dollars was required of said receiver, Zilenziger, before entering upon his duties, and he was required to report his proceedings to the court within thirty days, and said constable was enjoined from further proceedings against said goods. In pursuance of this order, said special receiver gave bond,

took possession of the goods, had them invoiced and appraised (the valuation fixed by the appraisers amounting to two thousand five hundred and fifty-nine dollars and seven cents,) and sold the same in bulk for two thousand seven hundred and six dollars and twenty five cents, and on the 5th of November, 1898, made his report, to the circuit court, which report, by a decree then entered, was ordered to be filed.   P. Oliver, constable, tendered in open court his petitions in said case, which was ordered to be filed, and in which was a prayer that the court would direct the special receiver to pay him, two thousand two hundred and ninety-seven dollars and twenty-nine cents out of the proceeds of the sale, being the amount of sundry executions in his hands which he had levied on said stock, and it appearing that said executions amounted to two thousand two hundred and ninety-seven dollars and twenty-nine cents, and that they were liens upon said stock.   The defendant shoe company, by counsel, appeared only for the purpose of objecting to a distribution, claiming an attachment against said property to the amount of one thousand three hundred dollars.   Thereupon the court, by its decree, held that the receiver should retain in his hands the said sum of one thousand three hundred dollars, to abide the action of the court upon said attachment, and that the residue of said fund should then be distributed.   The defendant Weinberger tendered in open court his answer consenting to the distribtuion of said fund.   The court then directed the special receiver to pay said constable, P. Oliver, the amount of the executions levied by him on said property, and allowed the receiver to retain out of the money in this hands two hundred dollars for his services, and one hundred dollars for counsel fees.   The defendant shoe company, by counsel, appeared at the time this decree was applied for only for the purpose of objecting to the legality of the same:   First, because Weinberger was insolvent, and the shoe company had a valid claim against him, which had not been reduced to judgment; second, because said cause was not matured and ready for hearing, and it was illegal to adjudicate the principles of the cause, and distribute the bulk of the fund, before the maturity of the cause, and even before the return of the process.   The court overruled this objection, and entered said decree dis-

tributing a large portion of the funds in the hands of the receiver, and the shoe company obtained this appeal.

The first point of error relied on is that the cause was not matured at the time of the decree, the return day of the process not having been reached. Let us first inquire as to the practice in regard to application for receivers. In *Ruffner* v. *Mairs*, 33 W. Va. 655, (11 S. E. 5), this Court held that "a court of equity should exercise extreme caution in the appointment of receivers on *ex parte* applications, and be careful that a proper case is presented before adopting this extraordinary procedure." High, Rec. § 107, says: "Interlocutory applications for a receiver before answer are usually supported by affidavits of the grounds relied upon, and it would ordinarily seem to be sufficient if the facts upon which the application is based are verified by the affidavit of plaintiff alone;" citing *Jones* v. *Dougherty*, 10 Ga. 273. Barton in his Chancery Practice (volume 1, p. 515)., says: "The immediate moving cause for the appointment of a receiver is that the subject of litigation may be preserved, or the rents and profits of it kept from waste, loss, or destruction, so that there may be some harvest—some fruit—to gather after the labors of the controversy are over." And on page 522 he says: "The appointment of a receiver being for the preservation of the property and the protection of the litigants pending the suit, such appointment gives no advantage to the person at whose instance it is made; nor does it change any title, or create any lien." The facts relied on in the case at bar are that the property owned by defendant consisted of a stock of goods, which had been levied on under numerous small judgments, and that, if the property was sold at public auction at constables' sale, it would result in great loss in the proceeds arising from such sale; that the constable had no authority to invoice said goods, and sell them in bulk, which could only be done by a receiver; and that the goods would be dissipated by contests in regard to conflicting claims. The receiver was required to give ample bond before proceeding to perform his duties for the protection of all parties concerned; and, in my view of the facts presented, the court was warranted in appointing such receiver to take charge of and sell the property as provided. I cannot see that the appellant was prejudiced

by said decree, nor do I understand this decree as prejudicial to the rights of appellant. Counsel for appellant insist, however, that the decree directing the distribution of a large portion of the proceeds of said sale was premature and unauthorized. Now, the principles controling the appointment of a receiver are very like those governing the granting or refusing injunctions. They are each brought into requisition when it is desirable to preserve property until conflicting claims and rights are determined. High, Rec. § 100, says: "As regards the form of an order appointing a receiver and authorizing him to sell the property in controversy, it would seem to be the better practice not to include in such order a direction as to applying the proceeds of the sale, since this is a matter for adjustment after a final decree settling the rights of all parties in interest." So, in the case of *Fadley* v. *Tomlinson*, 41 W. Va. 606, (24 S. E. 645), (an injunction case), this court held that: "In such case, while at rules, and not maturing for hearing, the court, having overruled defendant's motion to dissolve the injunction, cannot proceed to enter a decree settling the principles of the cause." When the records and briefs of counsel are looked to, it is at once apparent that there are conflicting claims which remain undetermined. Counsel for appellant assert that he has a valid attachment lien upon the property, while counsel for the plaintiff as confidently claim that the affidavit on which said attachment issued does not conform to the statute, and for that reason no lien was thereby acquired. This order went into the hands of the sheriff on the 17th day of October, and it must be presumed the sheriff performed his duty by levying it on the same day. Most of the executions seem to have been levied on the 19th and 20th of the same month, so that the priority and validity of these conflicting liens remain unsettled. Such being the case, and the plaintiff's suit not having been properly matured for hearing, following the ruling of this court in *Fadley* v. *Tomlinson*, *supra*, I hold that the circuit court erred in settling the principles of the cause and distributing a large portion of the money before the case was regularly matured. The decree must be reversed, and the cause remanded.

*Reversed.*