S. B. GILLETT, Administrator, Appellee, v. MRS. O. S. WARREN, Appellant.

SYLLABUS BY THE COURT.

1. ADMINISTRATION—COMMUNITY PROPERTY—COMMUNITY DEBTS.— Under the community system in this Territory a surviving husband has power, exclusive of statutes for administration of estates of deceased persons, to sell community property to pay community debts.

2. SPECIFIC PERFORMANCE OF CONTRACT WITH DECEASED—WHEN.— Specific performance of a contract for the sale of a piano to a deceased wife will not be enforced on the ground of its special or peculiar value where the surviving husband for the purpose of paying a community debt has transferred the same and put a money value thereon.

3. INSOLVENCY OF VENDOR—SPECIFIC PERFORMANCE—CONTRACT.—Insolvency of the vendor, standing alone, will not authorize the specific enforcement of a contract for the sale of chattels not furnishing for other reasons as a basis for equitable cognizance.

*Appeal* from the District Court of Bernalillo County, Second Judicial District. Remanded with instructions.

Statement of facts by the court.

This action was commenced by appellee to compel the specific performance of a written contract entered into between appellant and one Mattie Jane Gillett, on April 14, 1891, for the sale of a piano upon the following terms: The original purchase price was $400, to be paid in installments of $20, on April 14, 1891, and monthly thereafter until the purchase price was fully paid, the title to remain in the vendor until the purchase price was paid, when the vendor was to give a bill of sale; in case of failure to make the payments as specified, the vendor had the right to retake the property. The piano was delivered under the contract and all but $143.90 of the purchase price was paid, down to March 14, 1893, when the vendee died intestate, leaving a surviving husband, the appellee, and a minor child. On April 14, 1893, the whole of the balance of the purchase price being then due, the surviving husband, with the consent of appellant, delivered the piano to a third party who paid $50 to appellant on said balance, and who agreed with the surviving husband to complete the purchase price and then to pay him $175 for his interest, or the interest of the estate of his deceased wife, in said piano. The vendee of the husband never made any further payments to appellant, and on September 14, 1893, appellant took possession of the piano from the vendee of the husband without his knowledge, claiming a forfeiture of the contract. Appellant had not up to that time insisted upon the payments being made monthly as required by the contract. In November, 1893, the surviving husband tendered appellant the amount still remaining due on the piano, which was refused on the ground of a forfeiture of the contract for non-payment of the installments of the purchase price as they became due. In November, 1897, appellee was appointed administrator of the estate of his deceased wife and brought this action, at which time the appel-

lant was insolvent. Appellant demurred to the amended complaint, raising the points raised here, which was overruled. She then answered. The cause was referred to a referee who reported recommending a decree for specific performance of the contract and that appellee recover $100 as rent for said piano, less the $93.90 still remaining due on the purchase price. This report was confirmed by the court and decree entered accordingly.

CHILDERS & DOBSON for appellant.

1.  Pomeroy's Equity Jurisprudence, section 1402, lays down the rule with reference to requiring specific performance of contracts concerning chattels, as follows:

"The doctrine is equally well settled that equity will not in general, decree the specific performance of contracts concerning chattels, because their money value recovered as damages, will enable the party to purchase other in the market of like kind and quality. Exceptions—Where, however, particular chattels have some special value to the owner over and above any pecuniary estimate—the *pretium affectionis;* and where they are unique, rare and incapable of being reproduced by money damages, equity will decree a specific delivery of them to their owner, and the specific performance of contracts concerning them."

This case does not come within the exception to this rule, because the chattel has no special value to the plaintiff over and above its pecuniary estimate, neither is it rated for its uniqueness, rarity or is it incapable of being reproduced, at least plaintiff did not think so when he applied to defendant to take it back and afterwards obtained her consent to sell it to Mrs. Hand. The piano was an ordinary Kranich and Bach upright piano, there are probably thousands of them that could have been purchased upon the market.

"As a general rule equity will not decree specific performance of contracts relating to personal property. In order to sustain a bill for the specific performance of such a contract, it

is necessary to allege some good reason in equity and good conscience to take the case out of the general rule above stated." Carolee v. Handelis, 29 S. E. Rep. 935.

The decisions of the highest courts and the best text writers upon the subject of specific performance of contracts concerning personal property, say:    Pomeroy on Specific Performance:

"It is the fundamental principle regulating the exercise of this equitable jurisdiction that whenever the legal remedy of damages is sufficient, equity will not interfere, and the specific performance will be refused.  *  *  *  For this reason contracts concerning goods, wares, merchandise and other ordinary chattels, or public or other stock securities, which have a marked value and sale, are not specifically executed."    See also sections 11, 12, 13, Pomeroy on Specific Performance.

2.    The plaintiff had an adequate remedy at law, and the allegation in the complaint or the evidence offered in support thereof, that defendant was insolvent, was wholly irrelevant and immaterial.

Plaintiff claims to have tendered the defendant the sum of $100, the balance due upon said piano, in the month of November, 1893.    Upon her refusal, he could have taken out letters of administration and brought a suit in replevin, and all rights between the parties could have been litigated, and it matters not whether the defendant was a millionaire or insolvent, as the suit would have been for the specific property, and not for damages, and the question as to whether the defendant was solvent or insolvent at the time this suit was brought is immaterial, as his remedy was an action in replevin to recover possession of the piano.

3.    Our statute requires suits in replevin to be commenced within one year from the time the right of action accrues, consequently the plaintiff was required to commence his suit within one year from the time he made the tender in November, 1893, and not having done so, his right of action was barred, and this action to require specific performance is also barred.

In Allen v. Beal, 13 Am. Dec., 203, it is held: "When an action in law on a contract would be barred, a suit in equity for its specific execution will also be barred."

To the same effect, see following cases: Frame v. McKinney, 12 Am. Dec. 367; Lewis v. Marshall, 5 Peters, 469; Miller v. McIntire, 9 Peters, 61.

"A party is not permitted to evade the legal bar by changing his forum." McCrea v. Purmort, 16 Wend. 460.

The statute, therefore, operates upon such cases in the same way in equity as at law.

It is perfectly well settled that when there is a concurrent jurisdiction in equity and at law, or where a legal right or demand is sought to be enforced in chancery, the bar of the statute is as absolute, peremptory and inexorable in one court as the other. Carrol v. Green, 92 U. S. 509; Bank of U. S. v. Daniel, 12 Pet. 32; Wagner v. Baird, 7 How. 258; Boston & Maine Ry. v. Bartlett, 10 Gray, 384.

See note in 12 Am. Dec., page 370, citing numerous cases to same effect.

4. There is not one word of evidence attempting to excuse the plaintiff for his delays in bringing this action, and from the evidence it appears that about five years elapsed after Mattie J. Gillett died, before plaintiff ever attempted to administer upon her estate.

"The unexplained delay of the vendee to sue for the specific performance of the contract for the sale of a town lot for three and one-half years after the vendor refused to comply with the contract and took possession of the lot, renders him guilty of laches which bars his right to such relief. A person may by his laches be barred from enforcing specific performance of a contract, though the statutory period of limitation has not elapsed." Wolf v. Great Falls Power and Townsite Co., 38 Pac. 115.

To the same effect see Rogers v. Sanders, 33 Am. Dec. 635.

The case of Green v. Covillaud, 70 Amer. Dec. 725, is a very instructive case, and we quote from it as follows:

"While time is not of the essence of the contract ordinarily, yet in every case it will devolve upon the party seeking the relief, to account for his delay; and if there are circumstances showing culpable negligence on his part, or if the length of time which has been permitted to intervene, together with other circumstances, raise the presumption of an abandonment of the contract, or if the property has greatly enhanced in value in the meantime, and the purchaser has laid by apparently for the purpose of taking advantage of this circumstance, he will not be entitled to a decree in his favor. It will thus be seen that, so far from giving countenance to the idea that a party may wait for years, or even months, without fulfilling any part of his agreements, and then when he thinks it his interest to intervene, come in and claim, as an arbitrary right, a literal enforcement of the contract which he has broken, it is laid down by the court that, in every case of delay, a reasonable excuse for that delay must be given."

See also note page 739, 70 Amer. Dec. as follows:

"Party resisting specific performance need not show any particular injury or inconvenience; but the party seeking it must show that he has used due diligence, or must account in a reasonable manner for his delay and apparent neglect and omission of duty—Weber v. Marshall, 19 Cal. 458-460; and such delay unexplained is fatal to his right to enforce the contract: Bensley v. Mountain Lake Water Co., 13 Id. 316; equity, in refusing relief on the ground of delay, will allow a much shorter time than that fixed by the statute of limitations to operate as a bar. Grafton v. Wiggins, 23 Id. 34, all citing the principal case."

"In contracts giving a person an option to purchase a chattel for a given price within a limited time, time is of the essence of the contract, so as to prevent specific performance on failure without excuse to purchase within the specified time." Roberts v. Norton, 33 Atl. 532.

5. It is the fundamental doctrine upon which specific performance of contracts in equity depends, that either of the parties seeking to obtain an equitable remedy against the other

must, as a condition precedent to the existence of his remedial right, show that he has done or offered to do all the essential and material acts, required of him by the agreement, at the time of commencing suit, and in the language of many cases, the plaintiff must show himself, "ready, willing, desirous, prompt and eager." The plaintiff in this case failed to perform the conditions of the contract by paying the balance due upon said piano previous to the commencement of his action. The letter which he wrote to the defendant on the fourth day of November, 1898, was not a tender or an offer to comply, with the terms of said contract, and did not show that he was ready, willing or prompt in performing said contract on his part. No tender of the balance due on said piano was made within the time specified in said contract, and no sufficient tender was ever made before the commencement of this suit.

The facts in this case show that the plaintiff in November, 1893, tendered to the defendant one hundred dollars in payment of the balance due upon said piano, and the balance due at that time was $93.90, and the defendant declined to accept the same. No other tender was made except the letter written to the defendant in November, 1893, which is as follows:

"Albuquerque, N. M., Nov. 4, 1897.
"Mrs. O. S. Warren, Silver City, N. M.:

"Dear Madame—As administrator of the estate of Martha J. Gillett, deceased, I respectfully ask that you deliver to me, as administrator of said estate, the Kranich & Bach piano, No. 23858, the property of said estate, that you obtained from Mrs. E. M. Hand, in 1893.

"I naturally presumed that you have had this instrument rented during the period that you have had it in your possession, and of course I expect you to pay the estate a reasonable rental fee for said instrument during the time you have detained the same, and I fix the rental price of said instrument, per month, at $10, from the first day of November, 1893, to the first day of November, 1897, being four years, and more, that you have had the same in your possession and control.

The rent of said instrument, for said period, at said rental rate per month aggregates $480.

"Of course if the instrument has been abused, other than natural wear and tear, the estate is entitled to remuneration for such abuse and deterioration.

"There is due you, as I remember, $93.10, on said instrument. You are therefore respectfully requested to deduct the said sum of $93.10 from the said $480, and to remit the difference and to deliver the instrument to the Silver City National bank subject to the order of the administrator of said estate.

"If delivery of the instrument and payment of the amount due, as rent, on said piano, less the amount due you, is not made by Monday next, I shall commence suit, as administrator of the said estate, against you for the recovery of same. Awaiting your action in the premises, I am,

"Yours truly,

"S. B. GILLETT, Admr."

Plaintiff did not even offer to pay the balance due upon said piano, but wanted to have the balance which was due and owing upon said piano deducted from rent which he was arbitrarily attempting to charge against this defendant when the plaintiff had been guilty of negligence and laches in failing to commence any proceedings to recover said piano for over three and a half years after he had made the first tender. Such an offer is not a tender within the meaning of the law, and before an action of specific performance of said contract can be maintained, the plaintiff must show that he has performed, or is ready and willing to perform the terms of the said contract on his part required to be done. The plaintiff in this case has not brought himself within the principles laid down by Pomeroy on Specific Performance, section 323, etc.

6. The plaintiff attempts by his evidence to show that the defendant waived the conditions of said contract and right of forfeiture of same upon the failure of plaintiff to make payments according to the terms thereof. The defendant denies

that she ever modified or waived any of her rights to enforce every condition of said contract, and there is a direct conflict in the evidence of this point, and, therefore, plaintiff is not entitled to specific performance of this contract, according to the modifications which he claims, as the courts of equity can not modify or alter a contract and then execute it, and there is a direct conflict in the evidence as to whether there was a modification. 22 Amer. & Eng. Ency. of Law, page 933.

"Equity can not make nor alter a contract for the parties and then execute it. If the contract must be reformed before it can be executed it can only be reformed in a suit for that purpose, or upon a bill particularly praying for that relief. Grey v. Tubbs, 43 Cal. 359; Osborn v. Phelps, 19 Conn. 63; 48 Am. Dec. 133; Kemp v. Humphreys, 13 Ill. 573; Colt v. Beaumont, 32 Mo. 118; Norfleet v. Southall, 3 Murph. (N. Car.) 189. But see Philpot v. Elliot, 4 Md. Ch. 273; White v. Port Huron, etc. R. Co., 13 Mich. 356."

FELIX H. LESTER for appellee.

1. The evidence in this case shows that the defendant went to Mrs.. Amy S. Hand, who was in possession of the piano in question, and represented to her that her husband was in trouble and that her property was going to be attached, and that if she would let her take the piano she would keep it until the trouble was over and deliver it back to her at any time she wanted it. That Mr. Gillett immediately upon learning that Mrs. Warren had taken possession of the piano went to her and tendered her the balance due on the purchase price and demanded the possession of the same and the defendant refused to give it up. We submit that the facts in this case bring it strictly within the rule above stated.

"It will be seen from many cases cited in the foot note, that the equitable jurisdiction has not been confined to contracts; it is freely exercised to enforce the surrender and delivery of chattels in specie which have been tortiously obtained, or wrongfully detained." Pomeroy on Contracts, section 12, pages 15 and 16 and cases there cited.

2. It is in evidence in this case that an execution against the defendant had been returned unsatisfied, as no property could be found upon which to levy. Defendant also testified that she disposed of her property to avoid the payment of any judgment that the plaintiff might obtain against her. This is the most generally recognized principle for resorting to a court of equity for the specific performance of a contract relating to chattels, and is too well established to need authority to support it.

In Clark v. Flint, 22 Pick. 231, the owner of a brig had contracted in writing for a valuable consideration, to hold her in trust for the plaintiff and subject to his order and disposition and had then sold her to a third person, who had notice of the contract. The original contractor being insolvent, it was held that a specific performance should be decreed. On this point Wilde, J., said: "It is objected that the court ought not to exercise jurisdiction in equity for a specific performance of agreements relating to personal property. And generally that rule has been observed in the English courts, but has been subject to numerous exceptions, and has been uniformly limited to cases where a compensation in damages furnishes a clear and adequate remedy. If the party complaining has not such remedy, it is quite immaterial whether the contract related to real or personal estate. All, as it seems to me, that can fairly be inferred from the cases on this point is, that in contracts respecting personal estate a compensation in damages is much oftener a complete and satisfactory remedy, than it is in those which relate to real estate. But in all cases if a party has not such a remedy, a court of equity will entertain jurisdiction, and grant relief as justice may require." See also 46 N. J. Eq. 447; Chicago, R. I. & P. Ry. Co. v. Union Pac. Ry. Co., 47 Fed. 15; Penn. Ry. Co. v. St. Louis Alton Ry. Co., 118 U. S. 290.

3. The plaintiff in this case agreed to pay the defendant four hundred dollars for the piano in question, the same to be paid in monthly payments of $20.00 per month, and the evi-

dence shows that up to the time this suit was brought there had been $306.10 paid, leaving a balance of $93.90 still due.

In Brasher v. Gratz et al., 6 Wheat. 532, Mr. Chief Justice Marshall, delivering the opinion of the court, said: "* * * If, then a bill for a specific performance be brought by a party who is himself in fault, the court will consider all the circumstances of the case, and decree according to those circumstances.

"A consideration always of great weight, is, that the contract, though not fully executed, has been in part performed." See also, Pomeroy on Contracts, section 29.

4. It cannot be denied that the defendant, obtaining possession of the piano as she did, would be deemed to hold it in trust.

Pomeroy on Contracts, page 19, section 14, says:

"The jurisdiction which I am describing is greatly enlarged where a trust or fiduciary relation exists in relation to chattels. If an express trust has been created by the terms of the contract, or if a constructive trust has arisen from the acts or omissions of the parties, equity will decree a specific performance of the contract and compel a specific delivery of the chattels, whatever be their nature, special or common; and the same equitable relief will be granted to enforce a fiduciary duty or confidence reposed, which is not in the strict sense of the term a trust, as in the case of an agency. The court will, if necessary, interfere by injunction to restrain any improper disposition of or dealing with the chattels by the person upon whom the trust or fiduciary obligation rests." See also Pomeroy Eq. Jurisprudence, Vol. 2, Sec. 1044; McGowan v. Remington, 12 Pa. St. (2 Jones) 56.

5. It is well settled that where chattels have some special peculiar value to the owner over and above any market value which could be placed upon them in accordance with strict legal rules, an interest which has been happily termed *pretium affectionis* such as an heir-loom; and where the chattels are not individually of a common class, but are unique of their kind, and can not be readily reproduced, so that others of a similar

nature and equal value could not be procured by means of damages assessed according to legal rules, such as a painting, or other works of art; and where chattels are articles of unusual beauty, rarity and distinction, contracts concerning them will be specifically enforced in equity, and a delivery of them will be decreed, although they might be recovered in the common-law actions of detinue and replevin. The reasons of this rule are the utter inadequacy of any mere pecuniary compensation, and the incompleteness of the relief afforded by the legal actions in which the defendant might easily evade an actual delivery of the chattel itself." Pomeroy in Contracts, section 12.

6. It is idle for the defendant to argue, as he does in the first three points of his brief, that the action of replevin is included by text writers and jurists when they speak of "an adequate remedy at law." The attorney for the defendant cites no authority to support his proposition, and I am sure I am safe in saying that none could be found. The authorities are uniformly against it. Courts have never considered an action in replevin an adequate remedy for the recovery under a contract relating to chattels. The meaning of adequate remedy as it is used in this connection, is where a compensation in damages furnishes a clear and complete remedy, and where the damages can be recovered from the defendant after they have been awarded.

Attorney for the defendant, in the first point of his brief, labors hard to convince this court that our only remedy was an action in replevin and that being adequate, plaintiff had no right to resort to a court of equity for the specific performance of the contract. In his third point he seems to admit that plaintiff had the right to invoke the aid of equity for a specific performance, but claims that that right was barred, because under our statute suits in replevin must be brought within one year from the time the right of action accrues, and the action at law being barred the action in equity was also barred. The circuitous course of his argument is highly delectable. If, as defendant contends, we had had an adequate remedy at law in

an action of replevin it would not have been barred, because
the right of action did not accrue until the appointment of an
administrator of the estate of Mattie Jane Gillett, which was
done in November, 1897, and this action was begun the same
month.

Pomeroy on Contracts, section 12, page 15 (note), says:
"The opinion of Bell, J., in McGowan v. Remington, 12 Pa.
St. (2 Jones) 56, is so able, clear and full a discussion of the
doctrine and its reasons, that I shall quote from it at some
length.   The suit was in equity to compel the restitution of
maps, plans and surveys prepared and used by the complain-
ant in his business as a surveyor, together with his instru-
ments and office furniture, all of which had been left in the
possession and custody of the defendant, his clerk, while he
was absent on business, under an arrangement for their sur-
render when the complainant should return and resume his
business.   The defendant refused to deliver them under an
unfounded claim that they had been sold or given to him.   It
should be noticed that these facts present a point which will
be described in a subsequent section, viz., the effect of a trust
or fiduciary relation imposed upon the defendant concerning
the chattels.   A portion of the opinion is devoted to the con-
sideration of that topic, but all its material passages will be
quoted now to prevent a repetition.   After disposing of the
defendant's claim that they had been a gift or sale, the judge
proceeds:  'The contest is reduced to two questions:   First,
whether the bill presents sufficient grounds to warrant the in-
terference of a Court of Equity?   Secondly, whether that por-
tion of the decree which covers the surveying instruments and
furniture can be sustained?   As to the first point the defendant
insists that the only remedy is at law.   Though the action of
replevin is with us a broader remedy than in England, lying
in all cases where one man improperly detains the goods of
another, it is in no instance effective to enforce a specific re-
turn of chattels, since a claim of property and bonds given is
always sufficient to defeat reclamation, no matter what may be
the final issue of the contest.   As, therefore, our common law

tribunals are as powerless for such a purpose as the similar English courts, the propriety of' exerting the equitable jurisdiction now invoked, must depend with us, upon the same reasons that are deemed sufficient to call it into action there. Here, as there, the inquiry must be, whether the law affords adequate redress by a compensation in damages, when the complaint is of the detention of personal chattels. If not, the aid of a court of chancery will always be extended to remedy the injury, by decreeing the return of the thing itself.'" See also authorities quoted in subsections 1 and 5 of Point One, *ante*.

7. It may be stated as a general proposition in harmony with all the adjudications on the subject, that the defense of laches will be sustained only when one or more of the following conditions exist:

a. When, owing to the lapse of time and the death of parties and witnesses, the facts have become obscured and evidence has become lost so that the truth can not be made manifest.

b. When, owing to the change of parties, the coming in of innocent purchasers for value or other like changes, it would be inequitable to permit plaintiff to maintain his claim.

c. When there has been changes in the condition or value of the property, brought about by the labor or expenditure of the defendant, induced by the culpable silence or acquiescence of the plaintiff so that it would be inequitable to permit the plaintiff to assert his original rights.

These are the reasons for the equitable doctrine of laches, and it is hardly necessary to cite cases in support of this statement of them. We assert that there is nothing in the circumstances of the present case which make it inequitable to give the plaintiff the relief to which he is manifestly entitled under the proofs.

"No rule of law is better settled than that a court of equity will not aid a party whose application is destitute of conscience, good faith and reasonable diligence, but will discourage stale demands, for the peace of society, by refusing to interfere where there has been gross laches in prosecuting

rights, or where long acquiescence in the assertion of adverse rights has occurred. The rule is peculiarly applicable where the difficulty of doing entire justice arises through the death of the principal participants in the transactions complained of, or of the witness or witnesses, or by reason of the original transaction having become so obscured by time as to render the ascertainment of the exact facts impossible. Each case must necessarily be governed by its own circumstances, since, though the lapse of time of a few years may be sufficient to defeat the action in one case, a longer period may be held requisite in another, dependent upon the situation of the parties, the extent of their knowledge or means of information, great changes in value, the want of probable grounds for the imputation of intentional fraud, the destruction of specific testimony, the absence of any reasonable impediment or hinderance to the assertion of the alleged rights, and the like." Hammond v. Hopkins, 143 U. S. 250.

"And the question of laches turns not simply upon the number of years which have elapsed between the accruing of her rights, whatever they were, and her assertion of them, but also upon the nature and evidence of those rights, the changes in the value, and other circumstances occurring during that lapse of years. The cases are many in which this defense has been invoked and considered. It is true that by reason of their differences of fact no one case becomes an exact precedent for another, yet a uniform principle pervades them all. They proceed on the assumption that the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless or have been abandoned; and that because of the change in condition or relations during this period of delay it would be an injustice to the latter to permit him to now assert them." Gilliner v. Caldwell, 145 U. S. 368.

"The length of time during which the party neglects the assertion of his rights, which must pass in order to show laches, varies with peculiar circumstances of each case, and is

not like the matter of limitation, subject to an arbitrary rule. It is an equitable defense controlled by equitable considerations, and the lapse of time must be so great, and the relation of the defendant to the rights such, that it would be inequitable to permit the plaintiff not to assert them." Halstead v. Grinnan, 152 U. S. 416-7. And see Penn. Mutual Ins. Co. v. Austin, 168 U. S. 698; Abraham v. Ordway, 158 U. S. 420.

Let us now briefly consider whether either of the three conditions hereinbefore set forth as necessary to sustain the defense of laches, have any existence in the present case.

The defendant took possession of the piano in the fall of 1893, and while there is no direct evidence that it had been rented during this time, still it is natural to presume that it had, for the evidence shows that it is a part of defendant's business to rent pianos and that a reasonable rental for the same would be about five dollars per month. It is also natural to presume that the piano has deteriorated in value, and there is no possible ground on which the defendant can claim that it would be inequitable to her for the court to decree specific performance of the contract. While there has been a death of one of the parties of the contract, still this has not in any way prejudiced the rights of the defendant. The evidence shows that Mr. Gillett has endeavored in every way to obtain possession of the piano in question ever since the defendant, Mrs. Warren, took the same from Mrs. Hand, and the delay which the defendant asks the court to construe as laches has worked solely to her benefit.

We submit that if there is any possible way in which the plaintiff could be considered guilty of laches, according to evidence in this case, still with such a statute as ours, mere delay for a less time than the statutory period of six years would not bar plaintiff, unless the lapse of time is accompanied by other acts of plaintiff or circumstances surrounding the case which make it inequitable to give the relief asked.

8. Defendants seek to raise the question here as to plaintiff's contention that before defendants could claim a forfeiture against the plaintiff, under the terms of the contract, it was

necessary for her to have tendered a bill of sale to the plaintiff.

This point was not included in the "Assignment of Errors," and is, therefore, not properly reviewable here.

Plaintiffs have, however, abundance of authority to support their contention, and in citing a few of the numerous cases in their favor, do not wish it to be understood that they have waived their rights to take advantage of the point above stated.

In the case of Longworth v. Taylor, No. 8490, Federal Cases, Vol. 15, the said court "* * * In this case the defendant brought this action of ejectment in 1822 without tendering the deed or offering to refund the purchase money paid. He attempts to disaffirm the contract on the default of the plaintiff, some sixteen or eighteen months, disregarding the dispute as to the title, while he himself has been in default for nearly eight years. But he attempts to do more than this. He endeavors to take advantage of his own negligence, by placing the plaintiff in a worse condition than he would have stood if the deed and mortgage had been executed. This would be a new head of equity arising out of the party's own fault.

9.  Plaintiff wishes also to state in regard to this point that it was not assigned as error by the defendant, and is not, therefore, properly reviewable in this court, and in presenting his side of the question does not wish it understood that he has waived his objection to the same.

The evidence shows that all the purchase price became due on December 12, 1892, and that sometime after that date plaintiff paid defendant the sum of $50.00 and she still treated the contract as being in force. Pomeroy on Contracts, section 394; 73 N. W. 472; 128 U. S. 414; 21 Southern 807; Pomeroy Eq. Jus., section 1408.

10.  After waiver of forfeiture by vendor, he must give such notice of his intention to declare a forfeiture as will give reasonable time and opportunity to the vendee to perform.

· The evidence in the case shows that no such notice was ever given or that the defendant ever intended to declare a

forfeiture. Pomeroy on Contracts, section 395; 70 N. W. 1076; 29 N. W. 152; 20 Southern 542.

11. Where there is evidence to support the findings of the master and they can not be said to be manifestly wrong, his findings of fact are to be treated as unassailable.

This question was decided by this same court in the case of First National Bank v. McClellan at the August term of 1899, and the court is so familiar with the principle that it will not be necessary to do more than state the rule.

Defendant contends that the master was not justified in finding that plaintiff was entitled to recover $100.00 as damages for the rent of the piano. We submit that it was the least possible sum that the master could have allowed. The evidence shows that Mr. Gillett, as representative of his deceased wife, tendered the defendant one hundred dollars in gold in payment of the balance of the purchase price due on the piano prior to November 15, 1893, and that she refused it. We think that it is perfectly clear that the rent should have been allowed from that time; but there certainly can not be any question that plaintiff should be allowed rent from the fourth of November, 1897, when defendant, as administrator of his deceased wife, demanded possession of the piano and notified her that she would be held for the rent of the same. The evidence showed that a reasonable rental for the piano would be from $5.00 to $7.00 per month.

There is no direct evidence that the piano was rented, but it is natural to presume that it was, for the defendant is engaged in selling and renting pianos and if it had not been it is also reasonable to presume that she would have said so in her evidence, knowing that the plaintiff was endeavoring to hold her for the rent of the same.

However, it makes no difference in this case, as far as plaintiff's right to recover a reasonable rental for the piano, whether it was rented or not. The fact remains that plaintiff has been deprived of the possession of the piano all this time and defendant has had the use and enjoyment of the same, and equity will require her to pay a reasonable compensation for it.

12. Defendant claims that plaintiff should not be allowed a specific performance of the contract, because he has not performed the conditions of the contract required to be performed by him; i. e., that plaintiff has never paid the balance of the purchase price or tendered the same. This claim is without any foundation either in law or in fact. It has already been shown that plaintiff tendered defendant $100, in gold, prior to November 15, 1893, and the defendant refused it. (See record, page 30.) Defendant testified, "The plaintiff came to my office with $100.00, in gold. He offered to me, claiming it to be the balance due on the piano. I refused it telling him that I had taken possession of the piano and that the matter was closed and that he owed me nothing." The evidence further shows that Mr. Gillett placed the money with Gillett & Sons and notified the defendant that she could get the same from them any time she was willing to turn over the piano. And it also further shows that Mr. Gillett tendered the defendant the money twice in the postoffice of Silver City, and on November 4, 1897, after plaintiff had moved to Albuquerque and had been appointed administrator of his wife's estate he wrote her a letter, a copy of which is cited in defendant's brief.

a. An actual tender by plaintiff before suit is brought is unnecessary, when, from the acts of the defendant or situation of the property, it would be nugatory.

"An actual tender by the plaintiff before suit is brought is unnecessary, when, from the acts of the defendant or the situation of the property, it would be nugatory—a mere useless form. If, therefore, before or at the time of the completion, the defendant has openly and avowedly refused to perform his part, or declared his intention not to perform at all events, then the plaintiff need not make a tender or demand of performance before bringing his suit. It is enough that he is willing and ready and offers to perform in his pleading." Pomeroy on Contract, section 361; 72 N. W. 291; 69 N. W. 999.

This case comes strictly within this rule. As we have shown above, defendant testified that plaintiff came to her of-

fice with $100.00, in gold, and offered it to her and she refused it, telling him that she had taken possession of the piano and that the matter was closed and he owed her nothing. Plaintiff also stated in his complaint that he was ready and willing to perform. What more could he do?

b. Where the stipulations of the contract are mutual and dependent an actual tender or demand by the plaintiff prior to the suit is not essential to his obtaining the relief. See Pomeroy on Contracts, section 363, on page 448.

PARKER, J.—1. The interest or property of the wife in the piano under the contract was community property. Under the community system in force in this Territory, and as it existed under the laws of Spain and Mexico, the surviving husband has the right to administer upon community property to the extent at least of selling the same to pay the debts of the community. And this is true notwithstanding the statutes for the administration of the estates of deceased persons, the latter being held to be in addition to and not exclusive of the right of the husband to administer to the extent of paying community debts. Crary v. Field, 9 N. M. 222. The decision in Crary v. Field had reference to sales of real estate by the surviving husband, but no distinction in this regard exists between real estate and personal property, either under our statutes or the civil law of Spain and Mexico. This is what the surviving husband, in effect at least, did in this case. He delivered the piano to a third party upon an understanding that the third party would complete the purchase price to appellant and would pay him $175 in addition for his interest or the interest of the estate therein. In this manner he fixed the pecuniary value of the piano to him and the estate of the deceased wife. This action being within the scope of his authority is binding upon him and the minor child whom he represented.

2. Where articles of personal property are peculiar and individual in their character, or have a special value on ac-

*[margin note:]* ADMINISTRATION: community property: community debts.

count of the associations connected with them, as pictures, curiosities, family furniture or heir-looms,,

SPECIFIC per-
formance of
contract with
deceased:
when.

specific performance of a contract in relation to them will be decreed. 2 Beach Mod. Eq. Jur., Sec. 598, and cases cited; Pomeroy Spec. Perf., Sec. 12. The piano in this case was of ordinary make and possessed no qualities peculiar to itself or which rendered it difficult of duplication. So far as the instrument itself was concerned, money would buy in the market another just like it. It was, however, the piano which the deceased wife and mother had used. Associated with her memory, it would seem that it should possess a value not to be measured in money. But the surviving husband, acting within the scope of his authority as survivor and administrator, set a money price upon its value and thus robbed it of all special and peculiar value to him or to the estate. It became from that moment a chattel of nothing more than ordinary and common value, easily measurable in money damages as ascertained in courts of law. Under such circumstances, equity will not interfere to specifically enforce the contract for its delivery. Pomeroy Spec. Perf., Sec. 12; Dowling v. Bitjemann, 2 J. & H. 544; Scott v. Billgerry, 40 Miss. 119. We have not been referred to any case or text writer other than Dowling v. Bitjemann and Pomeroy, supra, where the distinction just drawn has been referred to, but it must be apparent that the distinction is sound and rests upon well established principles. The foundation for equitable jurisdiction to specifically enforce contracts of this kind rests upon the idea that the special interest, *pretium affectionis*, is inherently peculiar to the plaintiff, and is of such a character that it cannot be measured in money or assessed by a jury in a proceeding at law for damages. But when the parties in interest have fixed the money value of such a chattel, it no longer possesses a value peculiar to them or different from its value at law.

3. It is contended by appellee that the insolvency of

appellant and the consequent inadequacy of the remedy at law, gives the court jurisdiction to specifically enforce the contract. In a few cases the insolvency of the defendant has been alluded to by the courts as an additional reason for administering the equitable remedy of specific performance. Chicago, R. I. & P. Ry. Co. v. Union Pac. Ry. Co. et al., 47 Fed. 15; Parker v. Garrison, 61 Ills. 250; Avery v. Ryan, 74 Wis. 591; Clark v. Flint, 22 Pick. (Mass.) 231, 33 Am. Dec. 733. But we do not understand these or any other cases to announce a doctrine that insolvency, standing alone, will authorize the specific enforcement of contracts not furnishing, for other reasons, a basis for equitable cognizance. Pomeroy Spec. Perf. Sec. 26, 27. See Crawford v. Bradford, 2 So. 782; United N. J. R. & Co. v. Penn. R. Co., 28 N. J. Eq. 261; Heilman v. Union Canal Co., 37 Pa. St. 100.

*INSOLVENCY of vendor: specific performance: contract.*

It follows from the foregoing conclusions that the contract in this case under the facts and circumstances surrounding the same cannot be specifically enforced. The cause will be remanded with instructions to dismiss the complaint, and it is so ordered.

Mills, C. J., and McFie, J., concur.