# CHARLESTON.

GEO. E. WARREN CO. v. THE A. L. BLACK COAL COMPANY *et al.*

Submitted February 17, 1920.   Decided March 2, 1920.

1.  SPECIFIC PERFORMANCE—*Contract for Purchase of Coal Not Subject.*

    Equity will not entertain a suit for the specific enforcement of a contract for the purchase of coal, to be thereafter mined and shipped on the purchaser's orders, in stated quantities monthly, until the entire quantity purchased has been delivered. The remedy by an action at law for the breach of such contract is adequate. (p. 687).

2.  SAME—*Insolvency of Seller Does Not Give Jurisdiction to Specifically Enforce Contract for Purchase of Coal.*

    Insolvency of the seller does not confer jurisdiction on a court of equity to enforce such contract; the accident of insolvency does not affect the question of jurisdiction in such case. (p. 687).

3.  CORPORATIONS—*Stockholders of Insolvent Corporation May Organize New Corporation Relieved of Obligations of Old.*

    The stockholders of an insolvent corporation, whose property is about to be sold in a judicial proceeding against it, may organize a new corporation for the purpose of buying the property and if their purchase at the judicial sale is fair and free of fraud or collusion, the new company will take the property relieved of the obligations and contracts of the old company unless expressly assumed. (p. 646).

Appeal from Circuit Court, Monongalia County.

Suit by the George E. Warren Company against the A. L. Black Coal Company and others for specific performance. From an order refusing to dissolve an injunction and an order appointing a receiver, the named defendant appeals.

*Reversed, and injunction dissolved.*

*Moreland & Guy,* and *Hofheimer & Templeman,* for appellant.

*Glasscock & Glasscock,* for appellee.

WILLIAMS, PRESIDENT:

This suit was brought by the George E. Warren Co., a corporation, against the Serepi Coal Co. and A. L. Black Coal Co., also corporations, and others to compel specific performance of a contract made on the 1st of May, 1919, whereby the Serepi Coal Co. sold to the George E. Warren Co. 50,000 tons of coal at the price of $1.75 per ton, f. o. b. the mine, to be shipped at such times and in such quantities as the buyer should designate, the shipments to be as nearly in equal quantities per month as practicable.   The coal was to be run of mine produced at the Serepi Co's. mine No. 1, located  at  Maidsville, Monongalia County, and was to be delivered in quantities of 4,550 tons per month.   Payment was to be made not later than the 25th of each month for all shipments made pursuant to the buyer's orders during the preceding calendar month.   The buyer resold the coal to the New York Central R. R. Co. and the seller carried out its agreement for only a short time and then failed in its contract, and hence this suit.   The Serepi Co. was seriously embarrassed financially at the time of the contract with plaintiff, and suits were then pending against it.   Its property was sold under a decree in those suits, and purchased by the co-defendant, the A. L. Black Coal Co.  ·Learning that the seller was making deliveries of coal to other purchasers, plaintiff presented its bill to the judge in vacation and obtained an injunction restraining the aforesaid companies, their officers, agents and servants from selling and shipping coal from the aforesaid Serepi mine No. 1, until they shall have first shipped to plaintiff's order at least 4,550 tons in any month during the continuance of the contract, provided they should mine so much as

that quantity, and in the event they should mine less than that quantity they were enjoined from shipping any portion of it otherwise than to the plaintiff's order. The injunction was awarded on the 31st of October, 1919, and an injunction bond in the penalty of $500.00 required. On the 18th day of November, 1919, the A. L. Black Coal Co. moved the judge in vacation to require an increase in the amount of the injunction bond sufficient to cover any loss or damage which defendant might suffer in case the injunction should be dissolved, which motion plaintiff by counsel resisted and the judge overruled. The A. L. Black Co. then demurred and answered and plaintiff was given leave thereafter to file in the clerk's office its general and special replication thereto. The A. L. Black Coal Co. thereupon, on the 21st of November, renewed its motion, made on the 18th, to dissolve the injunction, and leave was given to both plaintiff and defendant to file affidavits and take depositions respecting said motion. In support of its motion defendant filed the affidavits of Ben Green, Max Dalinsky and Ben Oppenheimer, officers and stockholders in both companies, and leave was given plaintiff's counsel to cross-examine them, which was done. Whereupon defendant's motion was overruled, "for the present," and the order suspended for 20 days to give defendant an opportunity to apply to this court for an appeal. On the 24th of November on plaintiff's motion, and pursuant to notice, the judge in vacation appointed a receiver to take charge of and operate the coal mine, known as Serepi mine No. 1, lately owned by the Serepi Coal Co., and authorized him to employ servants to mine the coal therefrom, and to ship the same to the orders of the plaintiff in quantities of 4,550 tons per month, until the minimum amount provided for by the contract between said Serepi Co. and plaintiff shall be delivered according to the terms thereof, and required the receiver to make semi-monthly reports to the court from the date of his appointment and qualification, and required him to execute a bond in the penalty of $25,000, and any coal mined during any month, in excess of the quantity purchased by plaintiff, was directed to be sold at the highest price obtainable and the proceeds thereof to be applied to the existing debts of the A. L. Black Coal Co. From

the decrees, refusing to dissolve the injunction and appointing
a receiver, defendant has appealed.

In order to ascertain whether or not the judge properly over-
ruled defendant's motion to dissolve the injunction it is neces-
sary first to determine whether the contract sued on is one which
can be specifically enforced by a court of equity. Ordinarily
courts of equity will not enforce contracts for the purchase or
the sale of personal property to be used for purely commercial
purposes, the remedy at law for damages for a breach of such
contracts being regarded generally as complete and adequate.
There is hardly any article of commerce that is more easily ob-
tained in the open market than coal. It is true plaintiff al-
leges that it made diligent effort to buy other coal of similar
quality to that contracted for, and had not been able to do so,
but this is denied in the answer, and the abundance of the
product itself discounts the averment. That plaintiff may not
have been able to buy coal from the producers to whom it ap-
plied, does not show that it cannot do so in a reasonable time
by applying to others. The coal contracted for is not shown to
be of peculiar quality and different from coal produced from
other mines in the same vicinity. Coal is abundant, and if
plaintiff is willing to pay the price it can get it. That it may
have rendered itself liable to an action for damages by con-
tracting to sell the same coal to the New York Central Railroad,
on the strength of its contract for the delivery thereof by the
Serepi Coal Co. does not give equity jurisdiction; neither does
the alleged insolvency of the Serepi Coal Co. and of the pur-
chaser of its property at the judicial sale, the A. L. Black Coal
Co. confer jurisdiction. It is true some courts have held that
insolvency is a consideration in determining whether or not a
contract should be enforced, but on the contrary other courts
have held that insolvency furnishes an additional reason for
denying jurisdiction, for the reason that performance of his
contract by an insolvent defendant would enable a plaintiff to
obtain a preference over the defendant's other creditors. Al-
though equity jurisdiction to compel performance of contracts
is not confined to those relating to real estate, still, before it will
enforce contracts relating to the sale or purchase of per-
sonal property, there must exist reasons clearly showing that

the remedy at law for a breach thereof is inadequate, such for instance as that the article cannot be obtained on the open market, or is affected with a pretium affectionis, or that the injury to plaintiff is not compensable in damages. But coal is a commodity of such universal use and great abundance and is of such vital necessity to the industries of the country and the comfort of the people, that the government in its wisdom has seen fit to regulate its price for a time. All the coal capable of being produced by the numerous coal mines in the vast coal region in the northern part of this state certainly was not sold, so that the amount of 50,000 tons could not have been obtained by plaintiff to take the place of that it had contracted for, between May the 1st when the contract was made, and October 31st when this suit was brought. A case where a plaintiff's damages for a breach of contract can be ascertained more certainly and definitely than in the case here presented, can scarcely be imagined. Equity jurisdiction is not affected by the accident of defendant's insolvency. If the contract is not of that class which equity will enforce, defendant's insolvency will not aid the jurisdiction; it must exist independently of that fact. Pomeroy's Spec. Performance (2nd. Ed.) sec. 26; *Knott* v. *Mfg. Co.,* 30 W. Va. 790; *Dills* v. *Doebler* (Conn.) 26 Atl. 398; *Gillett* v. *Warren* (N. M.) 62 Pac. 975; *Heilman* v. *Union Canal Co.,* 37 Penn. 100; *Crawford* v. *Bradford,* (Fla.) 2 So. 782; *McLaughlin* v. *Piatti,* 27 Cal. 451; *The United N. J. R. R. and C. Co., and P. R. R. Co.* v. *Hoppock,* 28 N. J. Eq. 261.

That compensation in damages furnishes a complete and satisfactory remedy for the breach of the contract in this case denies equity jurisdiction. *Hissam* v. *Parrish,* 41 W. Va. 686; *United Fuel Gas Co.* v. *W. Va. Paving Co.,* 74 W. Va. 484; *Black Diamond Coal Mining Co.* v. *Jones Coal Co.* (Ala.) 76 So. 42; *Javierre* v. *Central Altagracia,* 217 U. S. 502. Mutuality is the well recognized principle of specific performance and it cannot be doubted for a moment that, if plaintiff had failed to carry out its obligation with defendant, defendant's remedy in an action for damages at law would have been adequate. This is merely an additional argument to show that equity does not have jurisdiction to enforce the contract.

Another reason why equity does not have jurisdiction in this

case is because the contract involves the service of skilled engineers in conducting coal mining operations, requiring time for its performance, and courts of equity do not ordinarily undertake the performance of contracts requiring the exercise of mechanical skill and continuous oversight. *Martin v. South Bluefield Land Co.,* 81 W. Va. 62; *Grape Creek Coal Co.* v. *Spellman,* 39 Ill. App. 630.

The bill alleges that the A. L. Black Coal Co. was conceived and formed for the purpose of taking over the property of the Serepi Co.; that the officers and stockholders of the two companies are made up principally of the same individuals; and that the officers of the A. L. Black Company had knowledge, at the time they purchased the property at the judicial sale of the existence of the unfulfilled contract between plaintiff and the Serepi company. It also appears that on the first of May, the date of the contract sued on, the Serepi Co. was largely indebted and that certain vendors' lien suits had been brought against it and were then pending, one brought by Darla Layton to enforce a vendor's lien on 55 acres of coal, one portion of defendant's property, and another brought by the Cass Coal Co. to enforce a vendor's lien against both pieces of coal property owned by defendant, and later a third vendor's lien suit was brought by David H. Courtney against it; that the two first named suits were heard together on the 24th of May, 1919, and a sale ordered of defendant's property and commissioners appointed and authorized to make sale thereof; that they did sell it to the defendant, the A. L. Black Coal Co., at public auction, it being the highest bidder, at the price of $70,000, of which amount it paid in cash a one-third part, and executed its two purchase money notes for the residue, payable on January 24, 1920 and 1921, respectively; and that this sale was confirmed on the 10th day of October, 1919. The bill does not allege that these suits were collusive, nor that there was any fraud in procuring the sale to be made, nor that the A. L. Black Co., purchased the property with assets belonging to the Serepi Co. In fact the bill alleges that both the Serepi Coal Co. and the A. L. Black Co. are insolvent. The contention seems to be that, because the new company is formed of the same stockholders and directors that formed the old company, and pur-

chased with knowledge of plaintiff's contract, it is merely the successor to the old company and is bound to fulfill its contract. This can hardly be the law. A corporation is liable only to the extent of its assets, and for aught that appears in the record it took all the proceeds from the sale of the Serepi Co's. property to pay off the debts against it. If the sale was fair and free from fraud, and there is no averment or showing to the contrary, the purchaser would take it discharged of the debtor's obligations. In addition to the debts for which suits had been brought against it, the bill avers that trust deed liens on the Serepi Co's. property, aggregating more than $19,000.00, existed in favor of Dalinsky, Green and Oppenheimer, and were created before the date of plaintiff's contract. Furthermore, the bill alleges that, on the 6th of October, before the sale of its property, the Serepi Co. confessed judgments in favor of the aforesaid parties, severally, and one in favor of the Long Powder and Supply Co., aggregating more than $8,500.00. It is not alleged that these debts were fraudulent, or that the judgments were fraudulently obtained, but on the contrary it is alleged that the Serepi Co. owed other debts besides these and was insolvent. There is no pretense that any of the stockholders in the new company were indebted to the old company for stock in it at the time of the formation of the new company. On what theory then can the new company be held liable for the obligations of the old one? Certainly not for the simple reason that it is composed principally of the same officers and stockholders. The stockholders of the old company, if they acted in good faith, and there is no averment that they did not, had a right to organize a new corporation to buy the property of the insolvent one, and when the new company purchased at the judicial sale it took the property free from the obligation of plaintiff's contract. 7 Fletcher, Corporations, section 4988; 4 Cook, Corporations, sections 460 and 490; *National Foundry and Pipe Works* v. *Oconto City Water Supply Co.,* 105 Wis. 49; *Hukle v. Railway Co.,* 71 Kan. 251; *Allen* v. *M. E. Church,* 127 Ia. 96; *Moyer* v. *The Ft. Wayne, Cinti. & Louisville Ry. Co.,* 132 Ind. 88; and *Equitable Trust Co.* v. *United Box Board & Paper Co.,* 220 Fed. 714.

The fact that the sale of the Serepi Co's. property was an

involuntary one, and that no fraud is alleged on the part of the purchaser, the A. L. Black Co., render the authorities cited by appellee's counsel inapplicable.

Equity being without jurisdiction to entertain the suit, it follows that the judge had no right to grant the injunction, which was only for the purpose of compelling compliance with its contract by the defendant, and likewise no jurisdiction to appoint a receiver to take charge and operate defendant's property. Even if the court had had jurisdiction to entertain the suit it was improper to appoint a receiver and invest him with power to mine the coal and deliver it to plaintiff's order, not to exceed the quantity provided by the contract to be delivered monthly, in advance of the final hearing of the case upon its merits. The effect was to give final relief to the plaintiff in advance of the hearing, and gave it a decided advantage over defendant. The status quo of the parties should be preserved, as nearly as possible, until the final hearing upon the merits. The prime object of a receivership is to preserve the subject matter until the suit is finally determined. *Rainey* v. *Freeport Smokeless Coal and Coking Co.,* 58 W. Va. 424; *Krohn* v. *Weinberger,* 47 W. Va. 127.

The decrees appealed from will be reversed, the injunction dissolved and the cause remanded, with instructions to the lower court to discharge the receiver after he has made proper settlement of his accounts.

*Reversed and injunction dissolved.*